534 S.E.2d 278

**In the Matter of David M. ADAMS, Respondent.**

**No. 25157.**

Supreme Court of South Carolina.

Heard May 23, 2000.

Decided June 26, 2000.

Attorney General Charles M. Condon, and Senior Assistant Attorney General James G. Bogle, Jr., for Office of Disciplinary Counsel.

Desa A. Ballard, of West Columbia, for respondent.

PER CURIAM:

In this attorney grievance matter, David M. Adams ("Adams") is charged with violating various provisions of the

Rules of Professional Conduct contained in Rule 407, SCACR, and the Rules for Lawyer Disciplinary Enforcement ("RLDE") contained in Rule 413, SCACR. The Full Panel recommended disbarment pursuant to Rule 7(b)(1), RLDE. We agree with the Full Panel's recommendation and disbar Adams from the practice of law.

FACTS/PROCEDURAL BACKGROUND

Adams is an attorney, formerly licensed to practice law by this Court, who maintained a law practice in Charleston, South Carolina. On December 29, 1998, this Court placed Adams' license on Interim Suspension based upon several acts of misconduct. A brief outline of Adams' misconduct as determined by the Full Panel is as follows:

1. **The Sandra K. Livingston/Shirrese B. Brockington Matter:** In the summer of 1998, Sandra K. Livingston ("Livingston") was appointed Personal Representative of her father's estate. Livingston hired Adams to be her attorney and/or the attorney for the estate. Her father's construction company was auctioned and the net proceeds ($116,985.00) were placed in Adams' escrow account. Some of the auctioned items were titled vehicles with outstanding liens. Adams did not forward any money to Farmers and Merchants Bank to release the liens, nor did Adams forward to the Personal Representative or the estate the balance of approximately $39,890.00 for unencumbered assets. He wrote approximately fifteen checks, using money from the Livingston estate, to persons or entities other than his client, the Livingston estate account, or Farmers and Merchants Bank.

2. **The Wachovia Check Matters:** Adams used operating account funds to satisfy a trust obligation in the Livingston matter in violation of Rule 1.5 (safekeeping of funds and commingling of funds). Adams also violated Rule 1.15 by writing an escrow account check in the Livingston matter because the Livingston funds had long since vanished from the escrow account. The check, therefore, used funds from clients other than the Livingston estate.

3. **The Welch Misappropriation:** A $33,640.17 deposit was made into Adams' escrow account for the Welch estate. Adams' account balance dropped to $5.52. All subsequent Welch disbursements were made with misappropriated funds.

4. **The Reynolds Misappropriation:** Adams represented Joseph William Reynolds regarding his mother's estate. The net proceeds from the sale of the Reynolds' home were placed in Adams' escrow account. Adams wrote a check with partial disbursement to Mr. Reynolds, and partial disbursement to himself. He also wrote several checks using the money from the Reynolds' estate payable to the South Carolina Department of Revenue Estate Tax Division for the estate taxes of another client. Disbursements regarding the Reynolds' estate came from other client funds, including a $3,055.05 check made payable to the South Carolina Department of Revenue and Taxation.

5. **The Internal Revenue Service Matter:** Adams failed to pay federal income taxes, or filed late tax returns for 1989, 1990, and 1991. He failed to file federal tax returns for 1994, 1995, and 1996. The Internal Revenue Service seized Adams' home on Kiawah Island. Adams borrowed $30,000.00 from Blyth Bullock to redeem his residence. When Adams repaid Ms. Bullock, he used another client's funds.

6. **The Barbara Oree Matter:** Adams failed to keep Ms. Oree informed as to the progress of her case, failed to return her phone calls, and failed to respond to requests for information. He took little or no action for the benefit of the estate. Ms. Oree receive a Summons from the Probate Court for contempt for not closing the estate in a timely manner.

7. **The Burk Y. Herrin, Jr. Matter:** Adams was hired to reopen the Herrin estate. Adams misappropriated approximately $3,449.38 in the Herrin matter. He also failed to recover 42 shares of stock, and did not supply information to Herrin as to the status of his stock.

8. **The Michael Arnau Matter:** Adams was hired to represent Michael Arnau ("Arnau") in a dispute with the

316

IRS over unpaid employment taxes. Adams failed to take any action on the case for over a year, failed to communicate with Arnau on numerous occasions, and failed to respond to inquires as to the status of the case. Adams cannot find the bulk of the Arnau file.

9. **The Patricia O. DeTreville Matter:** Adams misappropriated $68,919.38 from the DeTreville estate. Ms. DeTreville closed out two estate accounts and provided them to Adams for deposit into his escrow account in order to make final disbursement to the heirs. Adams received $71,155.79 on behalf of the estate. Funds disbursed or expended on behalf of the estate totaled approximately $2,236.41. Adams' escrow account went to a negative balance on October 8, 1998, and therefore $68,919.38 was misappropriated by Adams, or applied to uses other than those for which it was intended.

10. **The Frank Woolbright Matter:** Frank Woolbright hired Adams to represent him in an estate matter and a Common Pleas matter. Adams failed to communicate with his client concerning both matters. Mr. Woolbright received a letter from the Charleston probate court threatening to rule Mr. Woolbright in contempt for failing to file a number of documents in the estate. Adams also neglected the Common Pleas matter by failing to respond to discovery, and not attending both the September 10, 1998 and September 16, 1998 hearings.

11. **The Jeannette S. Wood Matter:** On December 18, 1997, some real estate was sold for $19,000 pursuant to an estate matter. A check was issued to Adams for $17,135.58 as a result of the sale. Adams misappropriated funds due and owing to Jeannette S. Wood, as Personal Representative, or due and owing to the Estate of George Farago. Roper Hospital was supposed to receive some of the proceeds from the real estate sale. Neither Roper Hospital, its attorney, nor the Personal Representative has received any of the proceeds from the real estate sale on December 18, 1997.

12. **Escrow Account Violations:** Adams failed to comply with Rule 417, SCACR, including: a failure to maintain receipt and disbursement journals specifically identifying the date, source, and description of each item deposited; a failure to maintain accurate ledger methods; failure to maintain copies of accountings and disbursements; failure to sufficiently detail the identity of each item of the receipt and records of deposit; and using an escrow account check to meet payroll.

13. **Failure to Respond to Disciplinary Authority:** Adams failed to reply to the Notice of Full Investigation and to several letters of inquiry by the Commission on Lawyer Conduct, including letters regarding the following cases: the Barbara Oree matter, the Burk Y. Herrin Jr. matter, and the Michael A. Arnau matter. Adams did respond late to the Third Notice of Full Investigation, but he did not accurately address all issues contained in the Notice of Full Investigation.

14. The Full Panel found Adams misappropriated approximately $280,196.44 from his clients. Although some of his clients in these matters have been fully compensated, $280,196.44 is the total amount of money that was mishandled, misappropriated, or used for an improper purpose.

On March 4, 1999, Adams was served with a Notice of Filing of Formal Charges by the Commission on Lawyer Conduct ("Commission"). He did not file an Answer to the Formal Charges within the thirty days required by Rule 413, SCACR. The Commission filed an Affidavit of Default on April 12, 1999. On June 4, 1999, Adams was served with a Notice of Filing of Second Formal Charges. He did not file an Answer and an Affidavit of Default was filed on July 20, 1999.

On July 28, 1999, a Subpanel hearing was held. Adams did not appear, but was represented by counsel, Desa Ballard ("Ballard"), of West Columbia. Ballard requested a continuance based upon health problems associated with Adams' prostate cancer. We agree with the Subpanel's denial of Adam's request for continuance based on the reasons cited below. The Subpanel denied the request for a continuance, and the companion Motion to Vacate the default based on the

318

following reasons: (1) Adams elected not to appear at the hearing on his own volition because he faxed an affidavit from his employment in Maryland, where he was apparently working on the day of the hearing; (2) the case had been going on for some time; (3) Adams chose not to reply to the inquiries of the Commission of Lawyer Conduct; and (4) these appear to be willful refusals to cooperate. The Subpanel did not find the medical evidence indicated Adams' health condition rendered him unable to cooperate with the Commission and attend the hearing.

The Subpanel recommended: (1) Adam be disbarred on the day of the Court's opinion in this case; (2) he be required to pay all costs incurred by the Commission in connection with this matter ($343.08); and (3) this Court order immediate restitution to all persons financially injured, repayment of unearned or inequitable costs, and reimbursement to any claims made against the Lawyer's Fund for Client Protection, as authorized by Rule 7(b)(7) of Rule 413.

On November 29, 1999, Adams filed seven exceptions to the subpanel report pursuant to Rule 26(c)(7), RLDE. The prosecutor filed a response to his exceptions on December 3, 1999. On January 21, 2000, the Full Panel adopted the Subpanel's report.

## CONCLUSION

By his conduct, Adams has violated several of the Rules of Professional Conduct and Rules for Lawyer Disciplinary Enforcement. The evidence overwhelmingly demonstrates a pattern of misappropriation of client funds, commingling of client money, neglect of legal matters, and other misconduct. The Subpanel found Adams engaged in the following acts of misconduct: (1) misappropriation of approximately $280,196.44; (2) failure to pay federal income taxes, or filed late tax returns for 1989, 1990, and 1991, and failure to file federal tax returns for 1994, 1995, and 1996; (3) willful failure to respond to a lawful demand from a Disciplinary Authority, Rule 7(a)(3), RLDE; (4) conduct tending to pollute the administration of justice or bring the legal profession into disrepute or demonstrate an unfitness to practice law, Rule 7(a)(5), RLDE; (5) violating the oath of office taken upon the admission to practice law in this state, Rule 7(a)(6), RLDE;

and (6) violating specific Rules of Professional Conduct, including Rule 1.1 (competence), Rule 1.3 (diligence), Rule 1.4 (communication), Rule 1.15 (safekeeping of property), and Rule 8.4 (all subsections of misconduct).

This Court has the sole authority to discipline attorneys and to decide the appropriate sanction. *Matter of Holt,* 317 S.C. 48, 451 S.E.2d 884 (1994). While this Court may draw its own conclusions and make its own findings in an attorney disciplinary matter, the unanimous findings and conclusions of the Full Panel are entitled to much respect and consideration. *Matter of Larkin,* 336 S.C. 366, 520 S.E.2d 804 (1999). The Commission recommends disbarment, as provided for in Rule 7(b)(1), RLDE. Based on the egregious nature of Adams' conduct and his outrageous pattern of misappropriation, we agree with the Commission's recommendation.

Disbarment in this case is neither excessive nor disproportionate to sanctions imposed by this Court in similar cases involving misappropriation, neglect, and other similar acts of misconduct. *See, e.g., Matter of Driggers,* 334 S.C. 40, 512 S.E.2d 112 (1999) (attorney disbarred for failing to provide competent representation, keep clients informed, consult with clients, promptly account for and deliver funds and documents, misappropriation of funds, and knowing failure to respond to disciplinary proceedings); *Matter of Godbold,* 336 S.C. 568, 521 S.E.2d 160 (1999) (attorney disbarred for failing to remit settlement funds to clients, remit funds to clients' medical providers, failing to pay bills, and failing to file state and federal tax returns); *Matter of Glee,* 333 S.C. 9, 507 S.E.2d 326 (1998) (attorney disbarred for converting client funds for his own purposes, failing to provide competent representation, failing to comply with demand for payment, failing to act with reasonable diligence, failing to keep client informed about status of case, being dilatory in winding up and closing a probate action, and engaging in conduct involving dishonesty); *Matter of Hunter,* 331 S.C. 586, 503 S.E.2d 464 (1998) (attorney disbarred for misappropriating client funds and converting these funds for his own gain, failing to act with reasonable diligence, and engaging in morally reprehensible conduct); *Matter of Edwards,* 323 S.C. 3, 448 S.E.2d 547 (1994) (attorney disbarred for failing to keep clients informed, misappropriating or improperly using client funds, knowingly presenting

false testimony, and in failing to cooperate in investigation of disciplinary charges against him).

Accordingly, we hereby **DISBAR** Adams, effective on the date of the filing of this order. We order Adams to pay all costs incurred by the Commission in connection with this matter. We also order Adams, pursuant to Rule 7(b)(7), SCACR, to make complete restitution immediately to all parties whose funds were misappropriated, including, but not limited to, clients, health care providers, and financial institutions. To the extent financial institutions, client security funds, or any other source paid restitution on account of Adams' misappropriation, Adams shall make complete restitution. Within fifteen days of the date of this opinion, Adams shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.